**Ralph GRIFFITH, Appellant,**

v.

**John SNADER and Kennett Township and Commonwealth of Pennsylvania, Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2000.
Decided April 4, 2002.

raised by the parties.

Daniel Jeck, Philadelphia, for appellant.

Thomas X. McAndrew, Exton, for appellees.

Before DOYLE, Senior Judge,[1] SMITH–RIBNER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge DOYLE.

Ralph Griffith appeals from an order of the Court of Common Pleas of Chester County, which granted the motion for summary judgment of Kennett Township and entered judgment in favor of the Township and against all other parties, with prejudice.

---

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

On September 18, 1995, Griffith and John Snader were involved in a two-car collision at an intersection in Kennett Township known as "Five Points," which is comprised of Old Kennett, Kaolin and Hillendale Roads. Before the accident, Griffith had been driving his vehicle west on Old Kennett Road, intending to cross the intersection and travel west on Hillendale Road, and Snader had been travelling north on Kaolin Road.[2] Snader's vehicle hit Griffith's car as it entered onto Kaolin Road,[3] and Griffith suffered a spinal cord injury that left him paralyzed below the chest. There is no dispute that Old Kennett and Kaolin Roads are state highways and that the Township owns Hillendale Road. Griffith maintains that the inter-section is notoriously dangerous, and that it is made more dangerous because it is controlled by a flashing beacon, which was installed on the Township's recommendation, instead of a more appropriate traffic-control signal.[4] Griffith instituted this action on September 17, 1997. He filed his fourth amended complaint on March 17, 1998. After discovery, the Township filed the instant motion for summary judgment, which Common Pleas granted on January 10, 2000. In granting the motion, Common Pleas noted, *inter alia*, that both Griffith and Snader were on state roads when the accident occurred.[5] Thereafter, Griffith settled with Snader and the Department of Transportation (PennDOT), and he also filed this appeal.[6]

2. *See* appendix for schematic based on Exhibit B attached to the brief in support of Griffith's response to the Township's motion for summary judgment, which is found in the original record.

3. At his deposition, Griffith testified in pertinent part as follows:

   Q. Hillendale crosses over in a T or, excuse me, an X with Kaolin; is that correct?
   A. Um-hum.
   Q. You have to say yes or no.
   A. Yes.
   Q. On either side, in other words, cars going west on Hillendale or cars going east on Hillendale, did you see any cars that morning?
   A. No.
   . . . .
   Q. You came up to the Five Points Intersection, you remember a stop sign for your travel lane?
   A. Um-hum.
   Q. You have to say yes or no.
   A. Yes.
   Q. Did you bring your car to a stop?
   A. Yes.
   . . . .
   Q. **From the time that you started your car up after bringing it to a stop at the stop sign for Old Kennett Road to the time of the collision when you started up again, had you entered on to Hillendale Road?**
   A. **No.**

   Q. What road did you enter on to before the collision occurred?
   A. That one that leads into Kennett Square.
   Q. Kaolin Road?
   A. Is that it?
   Q. Kaolin?
   A. Yes.
   (Notes of Testimony, N.T., Deposition of Ralph Griffith, July 21, 1999, at 50–51, 55–56) (emphasis added).

4. This beacon flashes yellow for drivers travelling on Kaolin Road and red for motorists travelling on Old Kennett Road. (N.T., Griffith Deposition at 40–41).

5. The opinion of the trial judge, Judge Paula Francisco Ott, succinctly noted that Griffith argued "that the Township does have responsibility for an accident that occurs when a Township Road **is part of** an intersection in which an accident occurs[,]" and found no merit in this argument, observing that "[i]n the case at bar, the drivers were both on state roadways and the township road was not involved at all." (Common Pleas Order at 1–2 n. 1).

6. Our standard of review of an order granting a summary judgment motion is limited to deciding whether Common Pleas abused its discretion or committed an error of law. *Sherman v. City of Philadelphia*, 745 A.2d 95 (Pa.Cmwlth.2000). Summary judgment is

Griffith now argues that Common Pleas erred in granting summary judgment in the Township's favor because there were sufficient facts, upon which reasonable inferences could be drawn, as to the existence of a duty of care by the Township to provide a remedy and/or recommend the replacement of a flashing beacon with a three-way traffic-control signal.[7]

First, we agree with Griffith that our Supreme Court's recent decision in *Starr v. Veneziano*, 560 Pa. 650, 747 A.2d 867 (2000), which relied on *McCalla v. Mura*, 538 Pa. 527, 649 A.2d 646 (1994) and *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), holds that a municipality's obligation to maintain its roadways free of dangerous conditions might include a duty to install an appropriate traffic-control device where doing so would alleviate a known dangerous condition. Further, we acknowledge that *Starr* set forth three elements that a plaintiff must show to establish a municipality's duty of care related to the installation of a traffic-control device, *viz.*, that

1) the municipality had actual or constructive notice of the dangerous condition that caused the plaintiff's injuries; 2) the pertinent device would have constituted an appropriate remedial mea-

sure; and 3) the municipality's authority was such that it can fairly be charged with the failure to install the device. *Starr*, 560 Pa. at 659, 747 A.2d at 873.

Nevertheless, we are satisfied that *Starr* does not control the matter *sub judice*. *Starr* specifically involved an accident that occurred when the plaintiff's car entered a state highway from a **township-maintained** road, and, here, as the trial judge specifically noted, no township road was involved in the accident leading to Griffith's injuries. Likewise, we do not find the reasoning of either *McCalla* or *Bendas* persuasive, since both of those cases involved the imposition of a duty of care on local agencies that owned or were responsible for at least one of the roads involved in the accidents therein.[8]

Here, we need not reach the question of the Township's duty to erect an appropriate traffic-control device because Griffith's and Snader's accident did not involve a Township road. The testimony provided by Griffith **himself** indicated that he had not yet entered onto Hillendale Road when his collision with Snader occurred; his **intention** to take Hillendale Road after traversing the intersection is irrelevant. Moreover, we hold that the

---

warranted when, after review of the record in the light most favorable to the non-moving party, it is determined that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*

7. Section 201.2 of the Pennsylvania Code, 67 Pa.Code § 201.2, defines a "[t]raffic-control signal" as "[a] device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." Further, this section of the Code defines an "[o]fficial traffic-control device" as "[s]igns, signals, markings and devices .... placed or erected for the purpose of regulating, warning or guiding traffic by authority of a public body or official having jurisdiction over the roadway." *Id.*

8. In *Bendas*, the Supreme Court determined that the Commonwealth has a duty to make its highways reasonably safe for their intended purpose. There, Robert Bendas had been driving on a township road when his vehicle collided with the vehicle of Merrell Perry, who had been driving on a state highway. Similarly, in *McCalla*, the Supreme Court decided that Allegheny County had a duty to make its roadways reasonably safe for their intended use. The underlying accident in that case occurred when Leona Mura turned from a county-maintained road onto a highway maintained by the Commonwealth.

mere fact that Hillendale Road was "part of the intersection" in which the accident occurred does not, in and of itself, render the Township potentially liable for Griffith's injuries, where, *a priori*, any alleged dangerous condition *that was the proximate cause of Griffith's injuries* was exclusively on state roads. As the Supreme Court instructed in *Starr*:

> It should be noted that a plaintiff can allege a duty short of the erection/installation of a traffic control device, for example, the duty to pursue approval of such a device in appropriate circumstances. **Nevertheless, in such an instance, the feasibility/appropriateness criterion would surface as a part of the plaintiff's proof of** *proximate causation,* **which, like duty, is an essential element of a negligence case.** Unless there is competent evidence that a traffic control would or should have been installed in a particular location in the first instance, a governmental entity's failure to consider or pursue its installation, even if negligent, cannot fairly be seen as the legal cause of the plaintiff's injury.

*Starr*, 560 Pa. at 660 n. 7, 747 A.2d at 873 n. 7 (emphasis added).

■ Under Sections 8541–8542 of what is frequently referred to as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8542, local government agencies like the Township are generally immune from liability in tort, unless immunity has been specifically waived. *Starr*, 560 Pa. at 657, 747 A.2d at 871. As our Supreme Court explained:

> The General Assembly has waived immunity when two distinct conditions are satisfied: (1) **the damages would be recoverable under statutory or common law** against a person unprotected by governmental immunity, and (2) **the negligent act of the political subdivision** *which caused the injury* falls within one of the eight enumerated categories listed in Section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b). *See generally White v. School Dist. of Phila.,* 553 Pa. 214, 217, 718 A.2d 778, 779 (1998).

*Id.* (emphasis added).

Of course, in the case at bar, no negligent act of the Township could have caused Griffith's injuries where a Township road was not in any way involved in the accident, but was merely part of a general intersection that was created when two state highways crossed a township road. Therefore, as previously explained, no question of the Township's duty to Griffith, let alone a breach of that duty, was properly established. Clearly, on this record, Griffith could not have recovered damages against the Township even absent statutory immunity.

■ Furthermore, directing our attention to Griffith's additional argument regarding the last element required for the establishment of the Township's duty of care with respect to the installation of a three-way traffic-control signal, we are satisfied that Griffith did not show that the Township had sufficient authority to charge it with the failure to install such a device. Although Section 6109(a)(2) of the Vehicle Code, 75 Pa.C.S. § 6109(a)(2), provides, *inter alia,* that it is a reasonable exercise of the police power for local authorities on streets or highways within their boundaries to regulate traffic by way of official traffic-control devices, Section 6122(a)(1) of the Vehicle Code, 75 Pa.C.S. § 6122(a)(1), provides that "[l]ocal authorities shall obtain approval of the department prior to erecting an official traffic-control device on a State-designated highway except [in situations not relevant here]."

In the instant case, we disagree with Griffith that the evidence shows that, **more likely than not,** PennDOT's approval of a three-way traffic-control signal would have been forthcoming at the Township's request **prior to the Griffith–Snader crash.** *See Starr,* 560 Pa. at 663, 747 A.2d at 874 (where the Supreme Court explained that "a plaintiff seeking to establish authority on the part of a municipality to erect or install a traffic control device will necessarily be required to prove that, more likely than not, PennDOT's approval would have been forthcoming"). While Griffith's expert did conduct a type of engineering and traffic study demonstrating that a traffic-control signal was appropriate to the intersection at issue, **the record correspondence sent before the Griffith–Snader accident does not indicate that PennDOT believed a three-way traffic-control signal was initially warranted.**[9] On January 10, 1993, David A. Herbert of the Kennett Township Safety Committee wrote to Stephen B. Lester, a PennDOT district engineer, requesting that the geometry of the intersection be reviewed and that improvements be implemented; another PennDOT district engineer, Douglas W. May, later wrote to Herbert in a letter dated March 22, 1993:

> I am responding to your request that asks us to review the intersection of Kaolin, Old Kennett and Hillendale Roads and recommend improvements.

We analyzed the reportable accidents recorded in the State Accident Records System. Our analysis showed two angle patterns and one rearend [sic] pattern.

> . . . .

Lowering the "oververtical" and regrading the embankments on both sides of Kaolin Road south of the intersection will improve the sight distance for motorists stopped on Hillendale Road. This will address the first angle accident pattern directly and indirectly address the other two accident patterns.

Moreover, after William R. Hewton, Jr., Vice–Chairman of Kennett Township, wrote to May on January 26, 1995, seeking a "preliminary on-site review" of Five Points, May responded by a letter dated July 21, 1995 (less than two months before the accident), which discussed improving corner site distance at the intersection only by having vegetation cut, trees removed, and utility poles possibly relocated. There is simply no indication that PennDOT believed installation of a three-way traffic-control signal (or any device other than a flashing beacon) was necessary before the crash on September 18, 1995.[10]

While we agree with Griffith that, before this date, the Township did not **specifically** ask for a three-way traffic-control signal, the Township did seek, prior to the crash and in conjunction with its police

---

**9.** The record does indicate, however, that, **subsequent to the accident,** PennDOT's approval for such a mechanism would more likely than not have been obtained. *See, e.g.,* the letter of Douglas W. May, P.E., PennDOT District Traffic Engineer to Cheryl A. Kusy, Kennett Township Secretary, dated June 4, 1998, stating, *inter alia,* that, "[o]ur preliminary analysis based on traffic volume data shows that a traffic signal is warranted." Even so, we will not consider evidence of this subsequent remedial measure. *See Duchess v. Langston Corp.,* 564 Pa. 529, 539, 769 A.2d 1131, 1137 (2001) (wherein our Supreme

Court points out that the common-law doctrine of subsequent repairs "excludes evidence of subsequent remedial measures at least when such evidence is offered to establish fault or culpable conduct.") *See also* Pa.R.E. 407.

**10.** Moreover, Donald Fein, a PennDOT engineer who had studied the intersection, testified that, while he could have recommended a traffic signal at Five Points in either 1993 or 1995, he did not do so. (N.T., Deposition of Donald Fein, April 6, 1999, at 61–62).

powers, PennDOT's general assistance in curing the sight distance problem at Five Points. We hold that, in this instance, with regard to the third element in the trilogy of requirements from *Starr*, the Township's pursuit of help from PennDOT to cure a known dangerous condition was sufficient to meet any duty it had toward Griffith to seek the installation of an appropriate traffic-control device.

For all of the above reasons, Common Pleas neither abused its discretion nor committed an error of law when it granted the Township's motion for summary judgment. Affirmed.

### *ORDER*

AND NOW, this 4th day of April, 2002, the order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby affirmed.