Jenni L. WENGER, Administratrix of the Estate of Elisabeth C. Wenger, Jenni L. Wenger, in her own Right and Jenni L. Wenger, Parent and Natural Guardian of Tayler L. Wenger and Amber N. Wenger, Appellants

v.

WEST PENNSBORO TOWNSHIP and Jason I. White

v.

Stephen E. Wenger.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 17, 2004.
Decided Feb. 15, 2005.

Terry S. Hyman, Harrisburg, for appellants.

Shaun J. Mumford, Camp Hill, for appellee.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Jenni L. Wenger (Plaintiff) appeals from the July 13, 2004, order of the Court of Common Pleas of Cumberland County (trial court) granting summary judgment to West Pennsboro Township (Township). We reverse.

On January 5, 2002, Plaintiff and her three daughters were traveling northbound on McAllister Church Road in a car driven by Plaintiff's husband, Stephen E. Wenger. As Mr. Wenger attempted to make a left turn onto Barnstable Road, their car was struck by a truck traveling southbound, driven by Jason I. White.[1] Six year-old Elisabeth Wenger died as a result of injuries sustained in the accident, and Plaintiff and her other two daughters also suffered injuries.

Barnstable Road and McAllister Church Road are Township roads[2] that intersect at the crest of a hill. As a result, McAllister Church Road has a deep dip north of the intersection that severely restricts sight distance along the road. (R.R. at 60a, 101a.) In addition, Barnstable Road intersects McAllister Church Road at offset locations, and the angle between the west and south legs of the intersection (left turn from northbound McAllister Church Road onto westbound Barnstable Road) is severely acute at about sixty-nine degrees. (Id.)

---

1. The intersection of McAllister Church Road and Barnstable Road is situated in West Pennsboro Township.

2. (R.R. at 100a, 104a, 118a.)

The record reflects that, due to limited sight distance, traffic safety at the intersection of McAllister Church Road and Barnstable Road had been a subject of concern for some time prior to Plaintiff's accident. At a March 19, 2001, meeting, the Township's board of supervisors discussed a recent accident at the intersection and decided to have the Township's engineer, manager and highway superintendent evaluate the problem and recommend solutions. (R.R. at 87a.) At their June 4, 2001, meeting, the board of supervisors was informed that a resident had recommended installation of a steel mirror for sight purposes until the Township reached a final decision concerning the intersection. The board's chairman suggested contacting Township Engineer Greg Lambert again for his evaluation of the situation. (R.R. at 90a.)

On January 21, 2002, about three weeks after Plaintiff's accident, Lambert conducted an evaluation of the intersection and submitted a report of his engineering study to the Township. (R.R. at 100a–01a.) On February 4, 2002, the Township installed four-way stop signs at the intersection. (R.R. at 105a.)

James C. Druecker, P.E., Plaintiff's liability expert, conducted an investigation of the accident and the conditions at the intersection. Druecker's investigation included a review of a Department of Transportation (DOT) traffic accident history report, state police reports, Lambert's engineering study, deposition transcripts and the results of a site inspection for measurements and observations. Druecker concluded that the excess speed of White's truck, the dangerous condition of the intersection and the failure of the Township to remedy the dangerous condition were substantial contributing factors to the cause of Plaintiff's accident. (R.R. at 58a–65a.) Druecker further concluded that the installation of three-way or four-way stop signs at the intersection or the leveling of the road were feasible and appropriate measures that would enhance the safety of the intersection and have a negligible detrimental effect on the overall traffic flow in the area. (R.R. at 118a–19a.)

On November 6, 2002, Plaintiff filed a complaint against the Township and Mr. White, alleging that Plaintiff's injuries were caused in part by the Township's negligence. Specifically, Plaintiff alleged that the Township designed and maintained the highways with a dangerous condition thereon and, despite having knowledge of the dangerous condition, failed to provide warning signs to motorists, post a lower speed limit, erect four-way stop signs or take any reasonable steps to correct the dangerous condition. (Count I of the Complaint, R.R. at 32a–34a.) The Township filed an answer denying any negligence on its part and brought cross-claims against defendant White and additional defendant Stephen E. Wenger.[3]

After completion of discovery, the Township filed a motion for summary judgment, alleging that Plaintiff failed to produce required traffic and engineering studies to support the alleged need for additional traffic control devices at the intersection and to establish that DOT would have approved the installation of such devices. (R.R. at 21a.) Relying on *Starr v. Veneziano*, 560 Pa. 650, 747 A.2d 867 (2000), the trial court concluded that Plaintiff was required to produce a traffic and engineering study that fulfills the requirements of 67 Pa.Code §§ 201.52(a) and 201.6(1).[4] The

---

**3.** Plaintiff has settled out of court with Mr. White and Mr. Wenger.

**4.** 67 Pa.Code § 201.52(a) states that the following elements shall be considered, as applicable, in every engineering and traffic study

trial court determined that Druecker's report lacks the essential elements of a traffic and engineering study because it does not contain a traffic count study, an analysis of prior accidents or proper sight distance measurements, as required by these regulations, and does not include an analysis of how the proposed changes would affect the existing traffic system. The trial court further held that Plaintiff was precluded from relying on Lambert's engineering study because that study was evidence of a subsequent remedial measure and/or was similarly substantively inadequate. Accordingly, the trial court granted the Township's motion for summary judgment, and Plaintiff now appeals to this court.[5]

 Summary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has established entitlement to judgment as a matter of law. *Herman v. Greene County Fair Board,* 112 Pa.Cmwlth. 615, 535 A.2d 1251 (1988). As with all summary judgment cases, we must view the record in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Wash-*

*ington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998). In order to withstand a motion for summary judgment, a non-moving party must produce sufficient evidence on an issue essential to her case and on which she bears the burden of proof such that a jury could return a verdict in her favor.[6] *Id.* The failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We stress that summary judgment is properly granted only in those cases which are free and clear from doubt. *Id.*

The trial court's decision is based largely on the court's application of *Starr* to the present case. The plaintiff in *Starr* was injured when her car was struck by a truck at the intersection of a township road and a state highway. The plaintiff filed suit against the truck driver, his employer and DOT, which joined the township as an additional defendant. Following a trial, a jury found in the plaintiff's favor, apportioning sixty percent of the liability to DOT and forty percent to the township. The trial court denied the township's motion for judgment notwithstanding the verdict, and this court affirmed.

---

pertaining to stop and yield control at intersections: 1) acceleration lane; 2) accident analysis; 3) geometric review; 4) pedestrian volume; 5) sight distance; 6) speed data; and 7) traffic volume.

67 Pa.Code § 201.6(1) states that an accident analysis shall consider the following items: 1) total number of accidents during the last three years; 2) number of accidents by type or causation factor; 3) vehicle type involved; 4) pedestrian involvement; 5) type of traffic control present; 6) roadway or intersection geometrics; 7) cause of accident; 8) time of accident; and 9) environmental conditions.

5. Our scope of review of a trial court order granting summary judgment is limited to de-

termining whether the trial court committed an error of law or abused its discretion. *Poole v. Township of District,* 843 A.2d 422 (Pa.Cmwlth.2004).

6. In pertinent part, Pa. R.C.P. No. 1035.2 provides that any party may move for summary judgment as a matter of law

. . .

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

On further appeal, our supreme court in *Starr* held that a municipality's duty to maintain its roadways free of dangerous conditions may include a duty to install an appropriate traffic control device, where to do so would alleviate a known dangerous condition. The court further held that, to establish a municipality's duty of care related to the installation of a traffic control device, a plaintiff must demonstrate that: 1) the municipality had actual or constructive notice of the dangerous condition that caused the plaintiff's injuries; 2) the pertinent device would have constituted an appropriate remedial measure; and 3) the municipality's authority was such that it can be fairly charged with the failure to install the device.

■ The first requirement, notice, is an element of the plaintiff's burden in every case related to establishing a local agency's duty concerning a dangerous condition of traffic controls and streets. *See* section 8542(b) of the act commonly known as the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b). With respect to the second requirement, the court in *Starr* noted that

under the Vehicle Code, the Commonwealth and its subdivisions may not erect traffic control devices unless it is first determined, based upon a traffic and engineering investigation, that a particular device is an appropriate means of regulating traffic. *See* 75 Pa. C.S. §§ 6105, 6109(e), 6122(b); *see generally* 67 Pa.Code §§ 201, 211.5.[7] These statutes and regulations reflect the concern that some devices may have undesirable effects upon the larger system of traffic regulation and control that preclude their use in certain locations. Because the determination of appropriateness entails consideration of principles and methods of traffic engineering that are beyond the scope of a layman's training, *expert opinion expressed within a reasonable degree of engineering certainty is generally required for the plaintiff to meet this requirement.*

*Id.* at 661, 747 A.2d at 873 (emphasis added).[8] With respect to the third requirement, establishing the municipality's authority to act, the court in *Starr* observed that DOT's approval was a prerequisite to the exercise of the township's authority to install the traffic control device at issue in that case.[9] The court held that, where DOT's approval is required, a plaintiff seeking to establish a municipality's au-

---

7. Generally, section 6105 of the Vehicle Code, 75 Pa.C.S. § 6105, states that DOT may establish when and how engineering and traffic studies are to be undertaken; section 6109(e) of the Vehicle Code, 75 Pa.C.S. § 6109(e), states that local authorities may take action regulating traffic only after an engineering and traffic investigation when and in the manner prescribed by DOT; and section 6122(b) of the Vehicle Code, 75 Pa.C.S. § 6122(b), states that DOT shall promulgate rules and regulations governing its approval for the installation of traffic control devices. The regulations at 67 Pa.Code Chapter 201 govern authority to establish traffic restrictions and set forth the necessary elements of engineering and traffic studies. 67 Pa.Code § 211.5 states that the decision to use a particular device at a particular location shall be made on the basis of an engineering and traffic study at the location.

8. In *Starr*, the court held that the plaintiff's showing of appropriateness was insufficient because *no expert opinion was offered* to establish the feasibility of the device at issue or the net effect of such a device upon the larger traffic system. Additionally, the court noted that the opinion of the plaintiff's expert "was apparently unsupported by *any* traffic or engineering investigation of the intersection." *Id.* at 660–61, 747 A.2d at 873 (emphasis added).

9. See 67 Pa.Code § 201.4(a), requiring DOT approval for traffic restrictions at the intersection of a state-designated highway and a local highway.

thority to install a particular traffic control device must prove that, more likely than not, DOT's approval would have been forthcoming.

■ The first element of Plaintiff's burden, notice, is met in the present case, since the Township's awareness of accidents and complaints concerning the condition of the intersection is not disputed. The third element, the Township's authority, also is not at issue. In contrast to the facts in *Starr*, both McAllister Church Road and Barnstable Road are under the sole jurisdiction of the Township, and DOT approval to establish a traffic control device is not required. *See* 75 Pa.C.S. §§ 6109(a)(6), 6122, 6124; 67 Pa.Code § 211.6(c). Indeed, because the Township did install four-way stop signs at the intersection, we conclude that the Township is estopped from arguing that it lacked authority to do so.

■ The remaining element of Plaintiff's burden is to demonstrate that the proposed traffic device would have constituted an "appropriate" remedial measure. Druecker explicitly opined that the installation of four-way stop signs was a feasible and appropriate measure that would dramatically enhance the safety of the intersection while having a negligible detrimental effect on the overall traffic flow. (R.R. at 119a.) Because the substance of Druecker's opinion satisfies the standard enunciated in *Starr*, we need only review the trial court's conclusion that Druecker's opinion lacks sufficient foundation as a matter of law.

The trial court based its conclusion on two premises: first, that Druecker's *report* lacked a traffic count study, an analysis of prior accidents, proper sight distance measurements and an analysis of how the proposed change would affect the existing

traffic system; and second, that Druecker could not rely on facts contained in Lambert's engineering study, because that study was inadmissible evidence of a subsequent remedial measure and/or was similarly insufficient.

■ Initially, we note that the holding in *Starr* does *not* require a plaintiff's expert to undertake and/or document an engineering and traffic investigation in accordance with any particular DOT regulation. Indeed, the court in *Starr* stated:

> We need not resolve here the precise character of the evaluation which must be undertaken by a plaintiff's expert, as the record in the present case contains no evidence that Starr's expert undertook any such appraisal. *We merely hold that there must be some factual predicate for the opinion identified on the record,* see generally Pa.R.E. 705 (relating to disclosure of facts or data underlying expert opinion), and the opinion must, of course, meet the requirements for admissibility contained in Pennsylvania Rule of Evidence 702 and our case law.

*Id.* at 663 n. 10, 747 A.2d at 874–75 n. 10 (emphasis added). Of course, in circumstances where DOT approval is a prerequisite to municipal action, a plaintiff's expert must support his or her opinion as to appropriateness with an analysis of the same facts that DOT would consider when its approval is sought. However, in other circumstances, such as those presented here, a plaintiff may satisfy the requirements set forth in *Starr* by presenting expert opinion, expressed with a reasonable degree of engineering certainty, that reflects the application of principles and methods of traffic engineering to facts gleaned from any combination of sources.[10]

**10.** See 67 Pa.Code § 201.3(a), concerning the application of engineering and traffic studies

Stated otherwise, where DOT approval is not an issue, an inquiry that conforms to generally accepted engineering standards and practices will produce the factual predicate identified in *Starr* as requisite for an expert opinion. Thus, we conclude that the trial court erred in determining that Druecker's opinion was insufficient as a matter of law because Druecker did not personally perform an engineering and traffic study in the manner provided by DOT regulations or set forth the results of such a study in his expert report.

The record reflects that, in opining that a four-way stop sign was an "appropriate" remedial measure, Druecker relied in part upon data contained in the engineering study performed by Township engineer Lambert. The trial court determined that Lambert's report also was insufficient under *Starr* to support Druecker's conclusions, in part because the report lacked sight distance measurements and an accident analysis as required by DOT regulations. As previously indicated, however, the holding in *Starr* does not specify the precise nature of the factual inquiry that must be undertaken by an expert in order for the expert's opinion to have sufficient factual support. Whether Lambert conducted his investigation in accordance with generally accepted engineering standards and practices has not been determined and, therefore, a ruling that his report is legally insufficient on this basis is premature.

Relying on *Griffith v. Snader*, 795 A.2d 502 (Pa.Cmwlth.2002), the trial court also held that Druecker could not rely on facts contained in Lambert's engineering report because Lambert's study was authored af-

ter Plaintiff's accident and, therefore, was inadmissible evidence of a subsequent remedial measure. We believe that the trial court erred in characterizing the study itself as a remedial measure; the whole purpose of Lambert's investigation was to determine whether remedial measures were warranted. We further conclude that the trial court erred in its application of *Griffith* to the present case.

In *Griffith*, the plaintiffs were injured in an accident at the intersection of three roads, two state highways and a township road. The drivers involved in the collision were traveling on the state highways when the accident occurred. In granting summary judgment in favor of the township, the trial court found that the township's road was not involved at all. This court affirmed, concluding that the mere fact that the township's road was part of the intersection was insufficient to render the township potentially liable for the plaintiff's injuries. The court in *Griffith* held that no negligent act of the township could have caused the plaintiff's injuries where the township road was not in any way involved in the accident. ("[W]e need not reach the question of the Township's duty to erect an appropriate traffic-control device because [the] accident did not involve a Township road." *Id.* at 505.) Nevertheless, and even after concluding that *Starr* was not controlling, the court in *Griffith* addressed the plaintiff's argument concerning the township's authority to install a traffic-control device. In doing so, the court specifically declined to consider a letter from DOT written almost three years after the accident, noting that the

to the installation of traffic control devices:

 a) New restrictions. The establishment or revision of a traffic restriction covered in this chapter may be warranted if:

(1) One or more of the engineering and traffic study elements justifies the traffic restriction.
(2) Sound engineering judgment based upon a combination of all data sources substantiates the need for the restriction.

common law doctrine of subsequent remedial repairs and Pa. R.E. 407 exclude such evidence "at least when such evidence is offered to establish fault or culpable conduct." *Id.* at 507 n. 9 (quoting *Duchess v. Langston Corp.*, 564 Pa. 529, 539, 769 A.2d 1131, 1137 (2001)).

■ As a general rule, evidence of subsequent remedial measures is inadmissible for the purpose of imputing antecedent negligence. Pa. R.E. 407.[11] However, Rule 407 expressly permits the introduction of evidence of subsequent measures when offered to prove matters *other* than negligence. Thus, in the present case, the rule does not require the exclusion of evidence of subsequent measures offered for the limited purpose of proving that the proposed traffic device was appropriate.[12] The court in *Griffith* did not hold otherwise.

Moreover, we agree with Plaintiff that Pa. R.E. 703 applies in this instance:

### Rule 703. Bases of opinion testimony by experts

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

As we stated in *Department of General Services v. United States Mineral Products Co.*, 809 A.2d 1000, 1026 (Pa.Cmwlth. 2002), "Experts are permitted to express opinions based upon reports, not in evidence, provided that such reports are of a type customarily relied upon by experts in the field in making professional judgments."[13] Accordingly, the trial court erred in determining that Druecker could not rely on Lambert's report on the basis that the report would be inadmissible at trial.

We conclude that the trial court erred in its application of *Starr* to the present case. We further conclude that, when viewed in

---

**11.** Pa. R.E. 407 provides as follows:

When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove that the party who took the measures was negligent or engaged in culpable conduct.... This rule does not require the exclusion of evidence of subsequent measures when offered for impeachment, or to prove other matters, if controverted, such as ownership, control, or feasibility of precautionary measures.

**12.** Because Pa. R.E. 407 does not exclude evidence of subsequent measures when offered to prove issues other than negligence, such as the feasibility of precautionary measures, evidence concerning the impact, if any, caused by the Township's installation of stop signs at the intersection upon overall traffic patters also may be admissible for the limited purpose of establishing that such a traffic

control device is appropriate under *Starr*. *See Hyndman v. Pennsylvania Railroad Co.*, 396 Pa. 190, 152 A.2d 251 (Pa.1959) (holding that evidence of subsequently erected warning signs was admissible in a negligence action for the limited purpose of showing that warning signs were a precautionary step that could have been taken without hindering the defendant's operation); *Phatak v. United Chair Co.*, 756 A.2d 690 (Pa.Super.2000), *appeal denied*, 566 Pa. 666, 782 A.2d 548 (2001) (holding that evidence of subsequent measures was admissible to show the feasibility of a design change).

**13.** When an expert testifies about underlying facts and data that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge, upon request shall, or on his own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion and not as substantive evidence. *See* Comment (2003) to Pa. R.E.703.

the light most favorable to Plaintiff, the record contains evidence sufficient to withstand the Township's motion for summary judgment.

Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with the foregoing opinion.

### ORDER

AND NOW, this 15th day of February, 2005, the order of the Court of Common Pleas of Cumberland County (trial court), dated July 13, 2004, is hereby reversed, and this matter is remanded to the trial court for further proceedings.

Jurisdiction relinquished.