IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronnie Rogers,                                    :
                    Appellant               :
                                                 :    No. 2678 C.D. 2015
          v.                                  :
                                                 :    Argued:  October 18, 2016
City of Philadelphia; and Allied           :
Construction Services II, Inc.;            :
and Catch Inc. a/k/a Anna's House     :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge **(P.)**


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  November 30, 2016


          Ronnie Rogers (Appellant) appeals from the June 2, 2015 and August 4, 2015 orders of the Court of Common Pleas of Philadelphia County (trial court) granting the motions for summary judgment filed by Allied Construction Services II, Inc. (Allied), and CATCH Inc. a/k/a Anna's House (CATCH), respectively.  We affirm.


**Facts and Procedural History**

          On March 13, 2014, Appellant filed a complaint seeking damages for injuries he allegedly sustained as a result of a trip and fall that occurred on December 8, 2011, on South 15th Street in Philadelphia, Pennsylvania.  Appellant averred that he

was crossing South 15th Street when he tripped and fell over a bent rod or bar (rod) embedded in the street, striking his head and left shoulder on the curb.

The fall occurred in front of 1208 South 15th Street, which is owned and occupied by CATCH. According to Appellant, CATCH contracted with Allied in 2005 or 2006 to construct its building and such construction involved the roadway in front of CATCH's property. Appellant asserted identical allegations of negligence against the City of Philadelphia (City), CATCH, and Allied, which included, *inter alia*, creating a dangerous condition of the roadway and/or permitting a dangerous condition to remain after they knew or should have known of the same; failing to inspect the roadway to discover a dangerous condition; failing to warn of the defect of the roadway; and for "[v]iolating City codes, regulations and ordinances concerning the unsafe condition of the defect in question." (Complaint, ¶¶13, 26, 35.)

After the pleadings were closed, the parties conducted discovery. Only one deposition was taken, that of Appellant, whose testimony is summarized below.

On December 8, 2011, Appellant walked his son to his designated school bus stop. At approximately 6:00 a.m., his son boarded the school bus and Appellant began to walk home via his normal route, i.e., south on Federal Street and crossing South 15th Street at an angle (outside the crosswalk). While Appellant was crossing the street and before he reached the sidewalk, Appellant tripped on the rod and fell in front of the CATCH building, causing his head and left shoulder to strike the curb. Appellant felt a bit dazed but continued home, which was less than half of a block away. Appellant stated that he laid down but awoke with a severe headache. A day or two after the incident, Appellant received medical treatment at the Philadelphia Spine and Wellness Center and underwent chiropractic treatment. Appellant testified that he injured his neck and left shoulder in the fall. Appellant stated that he receives

2

a series of shots in his neck at six-month intervals, but stated that he received shots of that nature prior to the fall due to pre-existing neck and back injuries. (Reproduced Record (R.R.) at 8a-10a, 12a; Certified Record (C.R.) No. 41, Exhibit C, at pp. 21-30, 42, 47-49, 52-53.)

Appellant testified that within a week of the fall, he told an individual at CATCH about tripping over the rod. According to Appellant, the individual informed him that "they should have been taking it up," which was in reference to the piece of rod that caught his shoe. Appellant does not know the individual's identity but described his physical appearance and stated that he still works at CATCH. (R.R. at 11a; C.R. No. 41, Ex. C, at p. 53.)

Appellant then testified as to his theory on how the rod was placed in the street. Appellant lived at the same location since 1999 and recalled construction taking place in the area of his fall in 2005 or 2006 when the CATCH building was constructed. Appellant remembered a construction trailer set up in the street for the duration of the project, which lasted approximately six months. The trailer was located in and around the area where Appellant fell. Appellant knew that Allied was performing the construction because he had inquired about working on its crew.[1] (R.R. at 9a-11a; C.R. No. 41, Ex. C, at p. 6.)

According to Appellant, the rod he tripped on resembled an "electrical corral ground," which indicated that electricity was being grounded at that location. Appellant further testified that he had experience in heavy highway construction as a laborer. Although Appellant never laid electrical ground, he stated that he observed the same being performed a few times on different job sites. Appellant testified that, on other, past job sites, he had observed individuals performing this task by either

---

[1] Appellant testified, however, that he did not work for Allied on that site. (R.R. at 11a.)

beating the rod into the ground, or by drilling a hole, placing the rod inside, and knocking the rod into the ground, but noted that different people performed the same in different ways. Appellant stated that these types of rods are generally a little over a half of an inch in diameter and are approximately five feet long. Appellant believed that the rod he tripped over was the type of rod used to lay electrical ground. (R.R. at 9a-11a.)

Appellant acknowledged that he never saw an Allied employee place this type of rod in the street and that the only time he observed Allied performing work on the street in the area of the fall was when plumbing lines were installed near the end of the building project. The sole reason that Appellant believed that Allied was the entity performing the plumbing work was because he knew that Allied was the general contractor on the job and was, therefore, "in charge." (R.R. at 11a-12a.)

During the years following construction of the CATCH building and up to the time of the accident, Appellant did not observe the rod in the street and indicated that the location where he crossed the street would vary depending upon where cars were parked. At the time of the incident, it was still dark and Appellant testified that he did not notice the rod immediately prior to his fall. (R.R. at 8a-9a, 12a.)

In April of 2015, two of the defendants, CATCH and Allied, filed motions for summary judgment. By orders entered June 2, 2015, and August 4, 2015, respectively, the trial court granted CATCH and Allied's motions for summary judgment. The trial court stated that Appellant's fall occurred on the City's street, not the sidewalk, and concluded that CATCH had no legal responsibility for the street. (Trial court's Pa.R.A.P. 1925(a) op., 5/2/16, at 2.)

4

Further, as to Allied, the trial court noted that, at his deposition, Appellant testified that he walks past the location of the accident on a daily basis and had not observed the bent rod on the day of the accident or any other day prior to the accident. The trial court stated:

> When questioned as to his theory of what the bent rod was and how it ended up in the street, [Appellant] stated that he had seen construction at the location of his fall six years previously. [Appellant] knew [Allied] was conducting the work because he had spoken to an employee on the site. He testified that the bent rod looked like an "electrical corral ground" for running electricity to work trailers. He testified that he never observed Allied employees placing or using the rod.

(Trial court's op., 8/4/15, at 2.) Thus, the trial court reasoned:

> Even in the light most favorable to the non-moving party, [Appellant's] explanation is devoid of evidence to support a finding that [Allied] inserted the rod in the street. [Appellant] did not see the bent rod for six years before the day of the accident. He did not see Allied workers actually place or even ever used [sic] the bent rod in the street. [Appellant] has not established any genuine issue of material fact, he relies only on speculation and the allegations made in his complaint. The bent rod could have been placed prior to or after the construction conducted by [Allied] occurred. [Appellant's] mere speculation that [Allied] placed the rod does not establish a genuine issue of material fact. He has presented no additional evidence to establish any activity by [Allied] concerning the rod.

*Id*. at 2-3.

After Appellant settled out of court with the City, the last defendant in the case, the summary judgment orders became final and Appellant timely appealed to the Superior Court, which transferred the appeal to this Court.

5

On appeal,[2] Appellant contends that the trial court erred in granting Allied's motion for summary judgment because it ignored Appellant's submission of circumstantial evidence, which must be weighed by a jury. Further, Appellant claims that the trial court erred because he may be entitled to a *res ipsa loquitor* charge giving rise to an inference of negligence. Appellant also contends that during discovery, Allied failed to produce permits issued by the City's Licenses and Inspections (L&I) Department for the construction activity and the lack of a permit is a clear violation of law and constitutes negligence *per se*.

Contrarily, Allied maintains that summary judgment was properly entered because Appellant did not present sufficient evidence to support a reasonable inference that the rod belonged to Allied, that Allied placed the rod in the street, or that Allied did so negligently. Moreover, Allied argues that there can be no inference of negligence based upon the doctrine of *res ipsa loquitor* because Appellant failed to sufficiently rule out other causes and/or entities in connection with the rod. Allied states that Appellant failed to brief the issue of negligence *per se* in any meaningful manner but responds that Appellant cannot assert the theory of negligence *per se* in the absence of identifying a statute or law allegedly violated by Allied and that the statute or law was enacted for the benefit of Appellant.

Appellant claims that the trial court erred in granting summary judgment in favor of CATCH because it is vicariously liable for its agent's negligence and may be found independently negligent for failing to inspect its worksite upon completion

---

[2] Our standard of review of a trial court's grant of summary judgment is de novo and our scope of review is plenary. *Sukenik v. Township of Elizabeth*, 131 A.3d 550, 555 (Pa. Cmwlth. 2016). A trial court's order will be reversed only if it committed an error of law or abused its discretion. *Jones v. Southeastern Pennsylvania Transportation Authority*, 748 A.2d 1271, 1272 n.2 (Pa. Cmwlth. 2000), *aff'd*, 772 A.2d 435 (Pa. 2001).

and/or failing to require proof of permits. In response, CATCH maintains that it cannot be held vicariously liable where there is no underlying negligence on the part of its agent, Allied. As to any claim for independent negligence, CATCH argues that Appellant failed to demonstrate any duty owed by CATCH.

## Discussion

Our rules of civil procedure provide that a party may move for summary judgment:

> if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. No. 1035.2(2). Notably, in order to survive a motion for summary judgment, a non-moving party must produce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. *Wenger v. West Pennsboro Township*, 868 A.2d 638, 641 (Pa. Cmwlth. 2005). Where, as here, a party seeks to avoid the imposition of summary judgment, that party must show by specific facts in its depositions, answers to interrogatories, admissions, or affidavits that there is a genuine issue for trial. *Jones v. Southeastern Pennsylvania Transportation Authority*, 748 A.2d 1271, 1272 (Pa. Cmwlth. 2000), *aff'd*, 772 A.2d 435 (Pa. 2001). The failure to adduce such evidence establishes the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wenger*, 868 A.2d at 641.

When resolving the merits of the motion, we examine the record in the light most favorable to the non-moving party, and any doubts as to the existence of a

genuine issue of material fact are resolved against the moving party. *Edinger v. Borough of Portland*, 119 A.3d 1111, 1113-14 (Pa. Cmwlth. 2015). We note that summary judgment may be granted only where the right to judgment is clear and free from doubt. *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1200 (Pa. 2009).

Whether there are genuine issues as to any material fact presents a question of law for an appellate court. *Shedden v. Anadarko E. & P. Company*, 136 A.3d 485, 489 (Pa. 2016). Importantly, however, the function of an appellate court is not to decide issues of fact, but only to determine whether a genuine issue of material fact exists. *Barra v. Rose Tree Media School District*, 858 A.2d 206, 214 (Pa. Cmwlth. 2004).

### Allied's Motion for Summary Judgment

Appellant contends that the trial court erred in granting summary judgment in favor of Allied because the trial court ignored circumstantial evidence from which a jury could find that Allied installed, and failed to remove, the rod in question.

First, Appellant contends that the trial court improperly increased his evidentiary burden by requiring him to produce direct evidence to support his claim. Appellant argues that Pennsylvania also permits the introduction of circumstantial evidence, and allows reasonable inferences to be drawn from that evidence. By doing so, Appellant misconstrues the trial court's decision, which clearly found his evidence, whether circumstantial or direct, insufficient to establish a genuine issue of material fact, i.e., that Allied had any sort of connection to the rod that caused him to fall.

8

Next, Appellant argues that his circumstantial evidence supported a reasonable inference that Allied installed the rod at issue. Here, we note that Appellant misapprehends the evidence required to withstand Allied's motion for summary judgment.

For instance, in response to the summary judgment motion, Appellant points to facts asserted in his "affidavit." Appellant's counsel asks this Court to disregard an error in the caption of that document, which identifies an entirely different and unrelated case. (Appellant's brief at 13 n.6.) However, this document does not contain a statement that either:

> (1) is sworn to or affirmed before an officer authorized by law to administer oaths, or before a particular officer or individual designated by law as one before whom it may be taken, and officially certified to in the case of an officer under seal of office; or (2) is unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Pa.R.C.P. No. 76 (Definitions, "affidavit"). Therefore, this document fails to qualify as an "affidavit" that can be part of the record for summary judgment purposes. *See* Pa.R.C.P. Nos. 1035.4 (pertaining to affidavits in support and in opposition of summary judgment); 1035.1 (designating the "record" for summary judgment purposes); and 76 (defining the term "affidavit").

Additionally, Appellant's counsel relied upon his own personal determination that no construction permits were issued. Appellant's counsel states in his brief that "[t]he City's L&I Department in the Municipal Services Building advised the undersigned in person that there were no permits pulled for 1208 S. 15[th]

9

Street, Philadelphia, PA, 'ever.'" (Appellant's brief at 13, 20 n.8.) However, the "record" on summary judgment is limited to

> (1) pleadings,
> (2) depositions, answers to interrogatories, admissions and affidavits, and
> (3) reports signed by an expert witness that would, if filed, comply with Rule 4003.59(a)(1), whether or not the reports have been produced in response to interrogatories.

Pa.R.C.P. No. 1035.1. In the absence of a qualifying affidavit, deposition testimony, answers to interrogatories, or admissions evidencing the same, Appellant's counsel's assertion is not part of the record for review.[3]

Lastly, Appellant relied upon his own deposition testimony that he was experienced in construction, knew that the type of rod in question was required for a construction trailer's needs, and observed how others inserted such rods into the streets. Further, Appellant points to his testimony that Allied's trailer was located where the rod was found. (Appellant's brief at 13.)

To prove a claim of negligence, Appellant must prove: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection

---

[3] To the extent Appellant argues that he was unable to obtain permit information from Allied in discovery, Appellant was required to seek permission from the trial court to supplement the record pursuant to Pa.R.C.P. No. 1035.3(b), which provides:

> An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence.

Pa.R.C.P. No. 1035.3(b). Appellant had various avenues by which he could have obtained such evidence, e.g., by filing a motion to compel Allied to respond to discovery requests or by serving a subpoena upon the City's L&I Department to produce such documents.

between the actor's breach of the duty and his resulting injury; and (4) actual loss or damage suffered. *Taylor v. Jackson*, 643 A.2d 771, 775 (Pa. Cmwlth. 1994). As we explained in *Taylor*:

> It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation. *Cuthbert v. City of Philadelphia*, 417 Pa. 610, 209 A.2d 261 (1965). Furthermore, our [S]upreme [C]ourt has stated that ". . . even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury." *Hamil v. Bashline,* 481 Pa. 256, 264, 392 A.2d 1280, 1284 (1978).

*Id*. Hence, even if Appellant were able to prove both a breach of duty and the occurrence of an injury, he must still show the two were linked by causation. *Krauss v. Trane U.S. Inc.,* 104 A.3d 556, 568 (Pa. Super. 2014).

Even though inferences can be drawn from the evidence, such inferences must be reasonable. *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 626 (Pa. Super. 2006). When reviewing the propriety of the grant of a summary judgment motion, we are mindful that a jury may not be permitted to reach its verdict on the basis of speculation or conjecture. *Id*. Rather, "there must be evidence upon which logically its conclusion must be based." *Krauss*, 104 A.3d at 568 (quoting *Farnese v. Southeastern Pennsylvania Transportation Authority,* 487 A.2d 887, 890 (Pa. Super. 1985)). It is well-established that:

> [a] plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. A jury is not permitted to find that it was a defendant's [negligence] that caused the plaintiff's injury based solely upon speculation and conjecture; there must be

11

evidence upon which logically its conclusion must be based. In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation. Additionally, a party is not entitled to an inference of fact that amounts merely to a guess or conjecture.

*Krauss v. Trane U.S. Inc.,* 104 A.3d 556, 568 (Pa. Super. 2014). As the Superior Court noted in *InfoSAGE, Inc.*, the standard of giving "the non-moving party all *reasonable* inferences deducible from the evidence in reviewing a grant of summary judgment does not require that we check our common sense at the courtroom door - in fact, just the opposite." 896 A.2d at 639 (alteration in original).

Viewing Appellant's deposition testimony in the light most favorable to Appellant, the only reasonable inference to be drawn is that Allied's construction trailer, even if it was fitted for electrical service, was in the area the rod was found during construction of the CATCH building. As noted above, Appellant testified that such construction took place over a six-month period in 2005 or 2006. Appellant further testified that he never saw anyone place the rod in question, and he never noticed the rod prior to construction or in the five-year period between the completion of construction and his fall. Appellant submitted no evidence to rule out other construction that may have occurred in the area and/or other entities that may have placed the rod. Further, Appellant submitted no other evidence to connect Allied to the rod. Without more, Appellant's evidence is insufficient for a jury to reasonably infer that Allied placed the rod in the street, let alone that Allied did so negligently.

In order to avoid the entry of summary judgment against him, Appellant was required to show by specific facts in depositions, answers to interrogatories,

admissions, or affidavits that there is a genuine issue for trial.[4] *Jones*, 748 A.2d at 1272. Appellant wholly failed in this regard. Rather, the inferences that Appellant argues can be drawn from the evidence are based solely on speculation and conjecture, which is insufficient for Appellant to survive summary judgment. *Krauss*, 104 A.3d at 568.

Furthermore, while Appellant attempts to shift the burden of proof to Allied to show that it did *not* place the rod, it is Appellant's responsibility to produce sufficient evidence on the issues essential to his cause of action and on which he bears the burden of proof such that a jury could return a verdict in his favor. *Wenger*, 868 A.2d at 641. Based upon the evidence of record, the trial court appropriately entered summary judgment in favor of Allied.

### *Res Ipsa Loquitor*

Appellant also claims that the trial court erred because he may be entitled to an inference of negligence based upon the doctrine of *res ipsa loquitor*.

The doctrine of *res ipsa loquitor* permits an inference that the harm suffered by a plaintiff is caused by the negligence of a defendant only when the following three elements are met:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

---

[4] Again, to the extent Appellant was unable to produce such evidence at the time of filing of the summary judgment motion, Appellant was required to follow the procedures set forth in Pa.R.C.P. No. 1035.3(b).

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Fessenden v. Robert Packer Hospital*, 97 A.3d 1225, 1230 (Pa. Super. 2014) (quoting Restatement (Second) of Torts §328D(1) (1965)). Allied argues that Appellant has failed to satisfy clause (b) of section 328D(1) of the Restatement (Second) of Torts because he failed to sufficiently rule out other causes and/or entities in connection with the rod.

Appellant attempts to place the burden on Allied to show that there were other responsible causes for the placement of the rod. In his brief, Appellant states:

It appears that only Allied and CATCH could have had any possible reason to embed an electrical ground rod, and that the likelihood is fairly high that they did insert a grounding rod near the trailer, where it was found. It is incumbent upon defendants [CATCH] and [Allied] to produce as an affirmative duty evidence that it was somehow not theirs, which it has not done.

(Appellant's brief at 18.) Further, Appellant asserts that "Allied has not offered any reasonable inferences for the pre- or post-existence of the grounding rod." *Id*. at 14. However, it was incumbent upon Appellant to show that all three elements noted above were satisfied for the doctrine of *res ipsa loquitor* to apply.

Appellant relies upon his own purported "affidavit" for his assertion that the rod could not have been placed in the street prior to Allied's construction because

14

the street was paved shortly prior to the same.[5]  Moreover, Appellant asserts that no other construction activity has occurred on that block since Allied concluded its construction, but offered no evidence to support the same.  Here, even if Appellant's purported affidavit was properly part of the record for this Court's review, which it is not, it is clear that Appellant has not sufficiently eliminated other responsible causes for the placement of the rod both prior and subsequent to Allied's construction activity.  Therefore, Appellant's argument that he may be entitled to an inference of negligence under the doctrine of *res ipsa loquitor* must fail.

### Negligence *per se*

Additionally, Appellant argues that it is clear that Allied's trailer had electricity hooked up to it, and Allied and/or CATCH failed to obtain permits that would have allowed a temporary electrical service to the site and the trailer.  Appellant contends that the failure to obtain permits for the construction activity is "a clear violation of law that a jury can determine negligence *per se*."  (Appellant's brief at 20.)  Appellant argues that the failure to obtain permits is, at a minimum, "a violation of City of Philadelphia ordinances."  *Id*.

First, there is no evidence of record to show that Allied and/or CATCH failed to obtain permits for the construction activity.  Appellant merely submits his request for production of documents wherein two broad requests were made for any and/or all documents related to the incident, incident site, instrumentality involved in the incident, and/or the facts and circumstances leading up to and following the

---

[5] In the document, Appellant states that he has lived less than a block from where the rod was placed in the street since 1998 and recalls that South 15th Street was resurfaced in the year prior to the construction.  Appellant then opines that "[t]he milling process would have taken up anything in the street like a rod or bar."  (R.R. at 13a.)

incident. (R.R. at 35a.) Allied responded to these requests by indicating that no documents existed apart from the documents it had already produced. (R.R. at 45a-46a.) Appellant contends that Allied's failure to include copies of construction permits in its response to discovery indicates that such permits do not exist.

In its brief, Allied responds that it did not produce permits because it had no permits in its possession and it produced what remained of its job file seven years post-completion of the construction project. Allied notes that such permits would have been equally accessible to Appellant had he served a proper and timely subpoena upon the City's L&I Department. Importantly, Allied points out that even if Appellant's broad requests could be deemed to have included a request for construction permits, the failure to produce the same does not evidence a violation of the law.

From the evidence of record, we cannot infer that Allied failed to obtain construction permits.[6] We note that if Appellant was unable to obtain full responses to its discovery requests, he was required to seek permission from the trial court to supplement the record pursuant to Pa.R.C.P. No. 1035.3(b), which provides:

> An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and **any action proposed to be taken by the party to present such evidence**.

Pa.R.C.P. No. 1035.3(b) (emphasis added). Had Appellant followed this procedure, he could have obtained appropriate evidence of record in support of his claim that

---

[6] Appellant's counsel contends that he confirmed the non-existence of construction permits by performing his own investigation by speaking with an employee or representative of the City's L&I Department and searching that Department's website. Counsel's statements in his brief, however, are not part of the record for purposes of summary judgment review.

Allied failed to obtain construction permits, e.g., he could have made a more specific request for Allied to produce the construction permits, moved to compel Allied to fully respond to the discovery requests, served Allied with interrogatories to inquire about the existence of construction permits, served Allied with a request for admissions to confirm their non-existence, or served a subpoena directly upon the City's L&I Department for the production of construction permits.

Importantly, even if Appellant had submitted evidence of record that Allied did not obtain construction permits, Appellant does not explain how the same constitutes negligence *per se*. "Negligence *per se* establishes both a duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm." *Ford ex rel. Pringle v. Philadelphia Housing Authority*, 848 A.2d 1038, 1062 n.11 (Pa. Cmwlth. 2004). As noted by Allied, Appellant does not develop this argument. Appellant does not identify which statute, ordinance, or law that Allied allegedly violated, let alone how that statute, ordinance, or law was designed to prevent a public harm. Appellant merely states, generally, that Allied violated unspecified ordinances of the City of Philadelphia. The same is insufficient to support a claim of negligence *per se*.[7] Therefore, Appellant's argument that a jury could find that Allied committed negligence *per se* must fail.

---

[7] Moreover, even if Appellant could prove negligence *per se*, he would still be required to show that such negligence was the proximate or legal cause of his injury. *Eckroth v. Pennsylvania Electric, Inc.*, 12 A.3d 422, 427 (Pa. Super. 2010), *appeal denied*, 21 A.3d 678 (Pa. 2011).

## CATCH's Motion for Summary Judgment

Appellant claims that the trial court erred in granting summary judgment in favor of CATCH because CATCH is vicariously liable for its agent's negligence. The rule of vicarious liability states that

> a principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them.

*Aiello v. Ed Saxe Real Estate, Inc.*, 499 A.2d 282, 287 (Pa. 1985) (footnote omitted). Here, however, there can be no liability of CATCH's agent because we have concluded that summary judgment was properly entered in favor of Allied. Without any underlying negligence of its agent, no vicarious liability can be attributed to CATCH. Therefore, Appellant's claim against CATCH for vicarious liability must fail.

Additionally, Appellant contends that the trial court erred in stating that CATCH had no legal responsibility over the area of the City's street where Appellant's fall occurred. According to Appellant, CATCH may be found independently negligent for failing to inspect its worksite upon completion and/or failing to require proof of permits. Appellant does not direct the Court to any evidence of record to support these assertions, and the record is devoid of such evidence. Therefore, Appellant's claim against CATCH for direct negligence must fail, and the trial court property granted summary judgment in favor of CATCH.

18

## Conclusion

Upon review of the record, it is clear that Appellant failed to produce sufficient evidence to create any genuine issue of material fact as to his claims against Allied and CATCH and upon which Appellant bore the burden of proof. Therefore, we discern no error in the trial court's grant of summary judgment in favor of Allied and CATCH.

Accordingly, the trial court's orders dated June 2, 2015, and August 4, 2015, are affirmed.

_____

PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronnie Rogers,                               :
                    Appellant                :
                                             :   No. 2678 C.D. 2015
          v.                                 :
                                             :
City of Philadelphia; and Allied             :
Construction Services II, Inc.;              :
and Catch Inc. a/k/a Anna's House            :

## *ORDER*

AND NOW, this 30th day of November, 2016, the June 2, 2015 and August 4, 2015 orders of the Court of Common Pleas of Philadelphia County are hereby affirmed.

                          _____
                          PATRICIA A. McCULLOUGH, Judge