PENTLONG CORPORATION, a Pennsylvania Corporation, and Weitzel, Inc., a Pennsylvania Corporation, individually and on behalf of themselves all others similarly situated, Appellants

v.

GLS CAPITAL, INC.

v.

County of Allegheny.

Commonwealth Court of Pennsylvania.

Argued April 16, 2013.
Decided July 15, 2013.

Bernard S. Rubb, Sewickley, for appellants.

Mandi L. Scott, Pittsburgh, for appellee GLS Capital, Inc.

BEFORE: COHN JUBELIRER, Judge, BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

In this appeal, we address questions involving the authority of private companies who purchase government liens to collect from delinquent taxpayers certain fees in addition to the lien amount owed. In so doing, we must address the effect and reach of two Pennsylvania Supreme Court decisions.

In *Pentlong v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240 (2003) (*Pentlong II*), the Pennsylvania Supreme Court, on allowance of appeal from our decision in the case, held, *inter alia*, that because Allegheny County (County) lacked the statutory authority to collect attorneys' fees from delinquent taxpayers, its assignee of those tax liens likewise lacked the authority to do so. In response to *Pentlong II*, the General Assembly amended the Municipal Claims and Tax Liens Act ("MCTLA")[1] in 2003 to authorize municipalities to collect reasonable attorneys' fees from delinquent taxpayers. The General Assembly made the law retroactive to January 1, 1996. In *Konidaris v. Portnoff Law Associates*, 598 Pa. 55, 953 A.2d 1231 (2008) (*Konidaris II*), the Pennsylvania Supreme Court held that the 2003 amendment to the MCTLA was constitutional.

On remand from the Supreme Court in *Pentlong II*, the Court of Common Pleas of Allegheny County ("trial court"), on summary judgment, held that notwithstanding *Pentlong II*, in light of the retroactive amendment to the MCTLA and *Konidaris*, the plaintiffs in this class action litigation ("Class") cannot prevail on their claim that GLS Capital, Inc. ("GLS"), as assignee of the County's tax liens, is not authorized to collect from the Class their reasonable attorneys' fees. In addition, the trial court held that GLS could collect assignment and revival fees from the Class. The Class has appealed both decisions. For the reasons set forth below, we will affirm the trial court's decision, but only in part, and will remand for further proceedings.

## I. BACKGROUND

### A. *Pentlong I*

This matter was last before us prior to class certification in *Pentlong v. GLS Capital, Inc.*, 780 A.2d 734 (Pa.Cmwlth.2001) (*Pentlong I*), *aff'd in part and rev'd in part*, 573 Pa. 34, 820 A.2d 1240 (2003). At

---

1. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. § 7101–7505.

that time, we heard an appeal by the named plaintiffs, Pentlong Corporation ("Pentlong") and Weitzel, Inc. ("Weitzel"), of the trial court's order dismissing their lawsuit against the County and GLS. In our opinion in *Pentlong I*, we summarized the nature of GLS's business, as it related to the collection of County tax liens. We explained that the County and GLS entered into

> a Purchase and Servicing Agreement ... on September 29, 1997, in which the County assigned all of its rights, title and interest to over 125,000 property tax liens it had filed through the 1995 tax year to GLS in consideration of approximately $35 million. The County later assigned the 1996 matching liens for the same properties for an additional amount in excess of $2.5 million. In collecting on the delinquent taxes, GLS required that the taxpayer pay, by certified or cashier's check, the full face amount of the tax, penalties and interest, attorneys' fees, lien filing fees, lien satisfaction fees, lien assignment fees and lien revival fees. The accrued interest as determined by GLS included interest for the entire month in which payment in full was made regardless of the day within the month that the taxes were paid in full.

*Pentlong I*, 780 A.2d at 736 (footnotes omitted). On March 18, 1998, Pentlong paid, under protest, the full lien amount, plus other costs and added interest that GLS assessed through the end of March 1998. Weitzel similarly paid its tax lien payoff under protest.

On April 3, 1998, Pentlong and Weitzel commenced this action for themselves and on behalf of all County property owners who had been assessed or billed by GLS for delinquent taxes. In their initial complaint, Pentlong and Weitzel asserted a claim against GLS for unjust enrichment.

They also alleged that GLS was guilty of fraudulent conduct, and they sought declaratory and injunctive relief, the imposition of a constructive trust, an accounting, and damages. Following the filing of preliminary objections by GLS, Pentlong and Weitzel ultimately filed a second amended complaint.

When the pleadings were closed, but before the trial court certified a class, the parties filed cross-motions for judgment on the pleadings. The trial court ultimately issued a decision, which included factual findings and conclusions of law. Without specifying the disposition of a particular motion(s), the trial court simply dismissed the second amended complaint with prejudice, concluding, in part, that the matter could not proceed as a class action, because the members of the putative class failed to exhaust statutory remedies.

Pentlong and Weitzel appealed from that order to this Court. We reversed the trial court, holding that: (1) Pentlong and Weitzel could maintain their equity action because the statutory remedy to challenge a municipality's calculation of individual tax liability (*i.e.*, *scire facias* procedures)[2] was not adequate to address the issues raised in the equity action; (2) GLS could only charge an interest rate of ten percent, rather than twelve percent; (3) GLS could not collect attorneys' fees from the delinquent taxpayers; (4) GLS could only collect record costs that the County actually incurred; and (5) GLS was not liable to delinquent taxpayers for expenses incurred by paying liens with certified funds. We thus affirmed the trial court in part, reversed in part, and remanded for further proceedings.

GLS appealed our order to the Pennsylvania Supreme Court. The Supreme Court affirmed in part. Of particular interest to the present appeal is the Su-

---

**2.** *See* Sections 14 and 16 of the MCTLA, 53 P.S. §§ 7182, 7184.

preme Court's affirmance of our decision that, because the County lacked the authority to collect attorneys' fees from the delinquent taxpayers, GLS, as the assignee of the County's rights, similarly lacked that authority. *Pentlong II*, 573 Pa. at 54–57, 820 A.2d at 1252–54. The Supreme Court also held that, with respect to lien-docketing costs, "GLS can collect not only any costs that the County could have added to the lien prior to assignment, but also . . . any costs that may accrue post-assignment." *Id.* at 59, 820 A.2d at 1255. The Supreme Court, however, declined to review claims about the appropriateness of certain costs that GLS desired to collect from the delinquent taxpayers. Instead, the Supreme Court, like this Court, remanded the matter to the trial court to consider those issues, along with the threshold question of whether the case should proceed as a class action. *Id.*

## B. Trial Court Proceedings on Remand

The Supreme Court remanded the record to the trial court on May 22, 2003. (Reproduced Record (R.R.) 10a.) On October 17, 2003, the trial court scheduled a status conference for later that month. (Certified Record (C.R.) No. 129.) On the day of the status conference, Pentlong and Weitzel filed a motion for class certification. (*Id.* No. 132.)

As noted above, on August 14, 2003, Governor Rendell signed into law the Act of August 14, 2003, P.L. 83 (Act 20), which amended, *inter alia*, Section 3 of the MCTLA, 53 P.S. § 7106, to authorize municipalities to collect reasonable attorneys' fees from delinquent taxpayers retroactive to January 1, 1996.[3] Several months later,

on March 1, 2004, Pentlong and Weitzel filed a Motion to Enforce Order of the Supreme Court of Pennsylvania and to Grant Partial Judgment on the Pleadings. (*Id.* No. 136.) In that motion, Pentlong and Weitzel argued that Act 20 is unconstitutional and unenforceable as to them and the class they sought to represent. Instead, they contended that they were entitled to a judgment in their favor on the question of whether GLS could collect attorneys' fees, pursuant to the Pennsylvania Supreme Court's decision in *Pentlong II*. The trial court denied the motion on October 18, 2004.

On November 30, 2004, the trial court entered a case management order at the request of GLS and the County. On January 14, 2005, Pentlong and Weitzel filed a Motion for Stay Pending Appellate Review in *Konidaris I*. (*Id.* No. 163.) In that motion, Pentlong and Weitzel noted that this Court would be addressing in the appeal of *Konidaris I* the constitutionality of Act 20 and, particularly, its retroactive application. Because the ability of GLS to collect attorneys' fees was a "central" issue in the case, Pentlong and Weitzel argued that a stay was appropriate pending this Court's decision on the constitutional question. On February 14, 2005, the trial court denied the motion.

On October 26, 2006, the trial court issued an order certifying the matter as a class action. As indicated in that order, the Class consisted of "[a]ll owners of real estate in [the] County . . . whose real property has been encumbered by liens for delinquent . . . County property taxes, which liens had been transferred or assigned by [the] County to GLS." (C.R. No.

---

**3.** In *Konidaris I*, we noted that, "[i]n an obvious attempt to remedy the situation [ (*i.e.,* the state of the law as a result of our Supreme Court's holding in *Pentlong II* ) ], five months later the General Assembly amended the [MCTLA] to expressly include tax claims as

among those to which a reasonable attorney collection fee may be added." *Konidaris v. Portnoff Law Assocs.,* 884 A.2d 348, 351 (Pa. Cmwlth.2005) (en banc) (*Konidaris I* ), *rev'd in part,* 598 Pa. 55, 953 A.2d 1231 (2008).

240).[4] In its supporting opinion, the trial court noted that GLS was relying on Act 20 to support its contention that it could collect reasonable attorneys' fees from delinquent taxpayers. The trial court further noted that, by this point in the proceeding, this Court had issued its decision in *Konidaris I* on the constitutionality of Act 20,[5] but that the Pennsylvania Supreme Court had granted a request for further appellate review, observing that "the Supreme Court's disposition will affect the trial on the merits of this class action." (C.R. 240 at 9.)

On November 21, 2006, GLS filed a motion for reconsideration of the class certification order or, in the alternative, for a stay of proceedings pending the Supreme Court's decision in *Konidaris II*. (C.R. No. 241.) On January 24, 2007, the trial court granted GLS's motion and stayed further proceedings pending the Supreme Court's resolution of *Konidaris II*. On August 18, 2008, the Supreme Court issued its decision in *Konidaris II*, upholding Act 20 and the retroactive application of Act 20 to the putative class in that case.

■■■ Thereafter, GLS filed a motion for summary judgment. It is the trial court's disposition of that motion, by way of memorandum and orders filed April 1, 2010, and August 25, 2010, which is the subject of this appeal. In the first decision, the trial court dismissed the Class's claim challenging GLS's ability to collect attorneys' fees. The trial court rejected the Class's contention that Act 20, enacted after Pentlong and Weitzel commenced this instant class action lawsuit and the Pennsylvania Supreme Court's decision in *Pentlong II*, precluded the Class from succeeding on that challenge. In the second decision, the trial court also dismissed the Class's challenge to GLS's collection of an assignment fee and revival fees, concluding that the collection of these fees was authorized and appropriate. The trial court refused, however, to address the Class's contentions that with respect to certain class members, GLS sought to collect a revival fee where no revival had ever occurred. The trial court reasoned that because the Class failed to raise this issue during a prior status conference, the trial court would not consider it. On appeal,[6] the Class challenges each of these rulings.

## II. DISCUSSION

### A. *Pentlong II v. Konidaris II*

Notwithstanding the passage of Act 20 and the Supreme Court's decision in *Koni-*

---

4. The trial court, on February 15, 2011, modified the Class to include "owners of real estate who are presently members of the [C]lass and who have made payments based on the Fee Schedule covering the first nine matters listed in the County Fee Ordinance." (C.R. No. 275.) This reference to the County Fee Ordinance pertains to the ordinance the County adopted pursuant to Section 3(a.1) of the MCTLA, 53 P.S. § 7106(a.1), added by the Act of February 7, 1996, P.L. 1, which authorizes municipalities to adopt a schedule of attorneys' fees for the compensation of attorneys in the representation of municipalities or assignees. (C.R. No. 275 at 2–3.)

5. We held, on constitutional grounds, that the Act 20 amendments to the MCTLA could not be applied to preclude unjust enrichment

claims against a collections firm for attorneys' fees that the firm collected *before* the passage of Act 20. *Konidaris I*, 884 A.2d at 355.

6. This Court's standard of review of a trial court's order granting summary judgment is de novo and our scope of review is plenary. *Pyeritz v. Commonwealth*, 613 Pa. 80, 88, 32 A.3d 687, 692 (2011). Under this standard, we may reverse a trial court's order only for an abuse of discretion or error of law. *Id.* In reviewing a trial court's grant of summary judgment, we consider whether any material issues of fact remain as to the necessary elements of the cause of action pleaded. *Id.*; Pa. R.C.P. No. 1035.2(1). Moreover, summary judgment is appropriate only when, after viewing the record in the light most favorable to the non-moving party and resolving

*daris II*, upholding the retroactive application of that law, we must determine whether *Pentlong II* still has value, at least as to the claims of the Class in this matter.

■ We begin our analysis with a passage from the Supreme Court's decision in *Konidaris II*:

> The complaint was filed and is currently captioned as a class action.... As the class was never certified, we will address the case purely in regard to Delinquent Taxpayers' personal claims. Pa. R.C.P. [No.] 1715(a) ("Except by special order of the court, no judgment by default or on the pleadings or by summary judgment may be entered in favor of or against the class until the court has certified or refused to certify the action as a class action.")

*Konidaris II*, 598 Pa. at 62 n. 5, 953 A.2d at 1234 n. 5. Though only directed at the parties in *Konidaris II*, this passage reflects the Supreme Court's view that, where a party has not sought (or the trial court has not issued) a special order under Rule 1715(a) of the Pennsylvania Rules of Civil Procedure, a judgment entered prior to class certification only benefits or hinders the named parties.

In this matter, the Pennsylvania Supreme Court ruled in *Pentlong II* that GLS lacked the legal authority to collect attorneys' fees from delinquent taxpayers, effectively ruling in favor of Pentlong and Weitzel on one of their main contentions in the lawsuit. But as was the case in *Konidaris II*, when the Supreme Court decided *Pentlong II*, the trial court had not yet certified this matter as a class action. No special order was issued in this case. Accordingly, even if we were to characterize the Supreme Court's decision in *Pentlong II* as a judgment, it would be binding on only the named parties and not the Class, which was not certified until after the law in effect at the time of *Pentlong II* changed through Act 20.[7] Thus, the Class cannot rely on *Pentlong II* to avoid Act 20.

We must consider, however, whether Pentlong and Weitzel, as the named parties in this lawsuit, are nonetheless entitled to some benefit from the Supreme Court decision in *Pentlong II*. Without discussing factors that would make a ruling, decision, or order a "final judgment," Pentlong and Weitzel argue that the Supreme Court's ruling constitutes a "final judgment" and that the General Assembly has no power to open or alter that favorable judgment by passing Act 20 and making it retroactive.

In support, Pentlong and Weitzel cite a United States Supreme Court decision, holding that acts of Congress cannot operate to annul a judgment of a court already entered, especially if the adjudication relates to private rights. *Pennsylvania v. The Wheeling and Belmont Bridge Co.*, 59 U.S. 421, 431, 18 How. 421, 15 L.Ed. 435 (1855). The United States Supreme Court held that "[w]hen they have passed into judgment the right becomes absolute, and it is the duty of the court to enforce it." *Id.* Pentlong and Weitzel also refer us to a decision of our Supreme Court in *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780 (1977), where our Supreme Court held that "judicial judgments and decrees entered pursuant to [then-effective] laws may

---

any doubt regarding issues of fact against the moving party, it is clear that the moving party is entitled to judgment as a matter of law. *Id.*

7. The Class urges us to adopt an analysis of the federal rule counterparts to Pennsylvania's class action rules of procedure, offering a reasoned analysis of the federal rules that would provide them with a more favorable result. We decline the invitation to resort to the federal rules, as Rule 1715(a) of the Pennsylvania Rules of Civil Procedure is clear and governs this matter.

not be affected by subsequent legislative changes after those decrees and judgments have become final." *Id.* at 264, 378 A.2d at 784 (footnote omitted). Thus, relying upon the Supreme Court's official entry of judgment on its docket on March 19, 2003, Pentlong and Weitzel claim they have a vested right. With regard to the fact that the Supreme Court's order did not resolve the entire litigation, Pentlong and Weitzel contend that the only impediment to concluding absolutely that they obtained a final judgment is the fact that the trial court did not "take the ministerial step of actually entering a 'final judgment' as to liability on the docket in this case." (Class Br. at 9.)

Pentlong and Weitzel contend that, based upon the Supreme Court's decision in *Pentlong II,* the trial court lacked discretion to do anything other than enter a final judgment on the attorneys' fees issue in their favor, because Pa. R.A.P. 2591(a) requires a trial court on remand to comply with the remanding court's directions.[8] Pentlong and Weitzel also argue that the rules of procedure providing for entry of summary judgment and judgment on the pleadings support their position.

■ We agree with Pentlong and Weitzel that the trial court was required in this matter to act consistently with the Supreme Court's decision in *Pentlong II* and the governing rules of procedure. Although the trial court's decision to enforce Act 20 against the Class was appropriate under the governing rules of procedure, doing so against Pentlong and Weitzel deprived those named plaintiffs of the benefit of the Supreme Court's decision in *Pentlong II.* On remand, the trial court should have afforded Pentlong and Weitzel the fruits of their labor, in this case a favorable decision by the Pennsylvania Supreme Court. While Rule 1715(a) of the Rules of Civil Procedure precluded the later certified Class from benefitting from *Pentlong II,* Rule 2591(a) of the Pennsylvania Rules of Appellate Procedure required the trial court to follow and enforce that decision as to Pentlong and Weitzel.

Consequently, we will affirm the trial court's judgment in favor of GLS on the question of whether GLS may collect attorneys' fees from delinquent taxpayers— *i.e.,* the April 1, 2010 Order, but only as to the later certified Class. With respect to Pentlong and Weitzel, however, we will reverse. On remand, as to Pentlong and Weitzel, the trial court must follow *Pentlong II* and fashion an appropriate order on the attorneys' fees claim consistent with this opinion.

## B. Assignment and Revival Fees[9]

We now turn to the Class's appeal of the trial court's August 25, 2010 Order. With respect to assignment fees, the Class argues that the trial court erred by failing to consider the question of whether an assignment fee is a "necessary cost" of tax collection. The Class contends that implicit in any authority to pass on an assignment fee to a delinquent taxpayer "is an implied statutory requirement that a fee

---

8. Rule 2591(a) of the Pennsylvania Rules of Appellate Procedure provides:

   On remand of the record the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court and, except as otherwise provided in such order, Rule 1701(a) (effect of appeals generally) shall no longer be applicable to the matter.

9. The parties do not dispute that the amount of the assignment and revival fees that the County may collect, because assignment and revival fees are set forth respectively in Sections 21042(13)(vi) and 21042(22) of the Second Class County Prothonotary Fee Act, 42 P.S. §§ 21042(13)(vi) and 21042(22).

be necessary before it can be collected." (Class Br. at 16.) They also dispute the trial court's conclusion that an assignment is a valid method of collecting unpaid taxes, characterizing an assignment, instead, as "a device used *in lieu* of the municipality collecting unpaid taxes." (*Id.* at 17.)

In response, GLS and the County argue that a lien assignment fee, like a revival fee, are permitted prothonotary fees under the Second Class County Prothonotary Fee Act, 42 P.S. § 21042. GLS also relies on Section 2 of the MCTLA, which provides municipalities the authority to collect from delinquent taxpayers not only the amount of the unpaid tax bill, but also "all charges, expenses and fees added thereto for failure to pay promptly." 53 P.S. § 7103. Section 33 of the MCTLA provides that an assignee of a municipal tax lien "shall have and enjoy the same rights, privileges and remedies as were held by the assigning municipality to enforce the assigned tax or municipal claim under the provisions of this act." *Id.* § 7147.

GLS and the County argue that the Pennsylvania Supreme Court in *Pentlong II* analyzed the foregoing statutory provisions and concluded that GLS can properly collect assignment fees charged by the prothonotary, citing the following passage from the Supreme Court's opinion:

> [T]he County has the authority to assign to GLS its right to collect from Taxpayers statutorily established costs. This means that GLS can collect not only any costs that the County could have added to the lien prior to assignment, but also

... any costs that may accrue post-assignment.

*Pentlong II*, 573 Pa. at 58, 820 A.2d at 1255. GLS and the County also direct us to the expansion of the definition of "taxes" in the MCTLA through the Act 20 amendments to include "all penalties, interest, costs, *charges, expenses and fees* as allowed by this act and all other applicable laws." Section 1 of the MCTLA, 53 P.S. § 7101 (emphasis added). "Charges, expenses and fees" is defined to include, *inter alia,* "all sums paid *or incurred* by a municipality to file, preserve and collect unpaid taxes ... including, but not limited to, prothonotary ... fees." *Id.* (emphasis added). Finally, GLS and the County note that the County incurs a prothonotary assessment fee when the fee is docketed, and the County is not required to pay the fee before it is collectable by an assignee. Section 9 of the MCTLA, 53 P.S. § 7143.[10]

In comparing the parties' contrasting arguments, we are persuaded by the statutory foundation of GLS's and the County's argument. There is no question that municipalities under the MCTLA have choices in how to relieve themselves of the burden imposed on their taxpaying citizens by delinquent taxpayers. Municipalities can engage in collection efforts on their own or they can assign those tax claims to third-parties that are willing to assume the risk of non-collection and pay the municipality for those claims. Either tack is equally authorized under the law. Indeed, assignment of claims to a third-party for a fixed and certain sum may be more beneficial to

---

10. Section 9 of the MCTLA provides, in pertinent part:

> In counties of the second class, the county shall not be required to advance or pay any fee to the prothonotary for the filing of paper or electronic filing or performing any service for the second class county relating to the filing, satisfaction, assignment, transfer, revival, amendment, enforcement and

collection of taxes, tax claims and tax liens. The prothonotary shall accept filings by or on behalf of the second class county relating to the taxes, tax claims and tax liens and note the cost for such service performed on the docket, and the second class county and [its] ... assigns shall thereafter collect such fee as a cost as part of the taxes, tax claims and tax liens.

cash-strapped municipalities who can ill afford protracted and costly collection efforts.

■ We reject the Class's characterization of an assignment as an act *"in lieu* of" collecting taxes as artificial and not grounded on the comprehensive statutory scheme of the MCTLA. Regardless of the tack chosen by a municipality to relieve itself of its portfolio of tax liens, the municipality collects, whether from the delinquent taxpayer or from a third-party that purchases the liens. The fee to effect assignment of the liens to a third party is a prothonotary fee incurred to collect and, therefore, is a fee that can be collected by the assignee under Section 33 of the MCTLA.

The Class asks us to read into the statute a requirement of "necessity." The more direct question, and the question that follows from the statutory framework, is whether the fee in question is a sum incurred by the municipality to collect unpaid taxes. Section 1 of the MCTLA. If it is, then it may be collected from the delinquent taxpayer either by the municipality or its assignee. As noted above, if assignment is the chosen mechanism to collect on delinquent tax claims, to the extent the prothonotary imposes an assignment fee, which is authorized by law, that fee, for all intents and purpose, becomes "necessary" to effect the assignment and for the municipality to collect. And the law allows the assignee to pursue such fees. Indeed, we have no trouble concluding that the ability of assignees to collect such fees is part and parcel of what makes the purchase of tax liens from municipalities an attractive market, which in turn benefits municipalities and their tax-paying citizens.

With respect to the revival fees,[11] the Class again raises its "necessary" fee argument. The Class argues that it was unnecessary for the County to revive at least a portion of liens securing the tax claims sold to GLS, because the liens were not close to their expiration date. The Class contends that the trial court erred when it opined that revival was "a reasonable step to effect an assignment" (8/25/10 Opinion at 6) for two reasons. First, the Class argues, as it did with the assignment fee, that the revival fee is an action *in lieu* of collecting taxes and thus is not a collectable fee. Second, the Class contends that the question is not whether it was reasonable for the County to revive the liens to effect the assignment, but rather whether the delinquent taxpayer should pay the fee to GLS if, while reasonable, revival was not "necessary." Finally, the County contends that, because the blanket revival of the liens was an effort to increase the value of the liens for the benefit of the municipality, the County acted in bad faith and the fees should not be collectable from the delinquent taxpayers. "To hold otherwise," the Class contends, "would be to hold that the General Assembly knowingly ceded to [the] County, the right to surreptitiously increase real estate taxes by effecting multiple revivals and multiple assignments of tax liens, each accompanied by a filing fee that is added to a tax lien, without the [C]ounty or its assignee ever being called upon to pay said fee." (Class Br. at 19.)

---

11. Under Section 1 of the MCTLA, an unpaid tax claim operates as a lien upon the real property of the delinquent taxpayer. 53 P.S. § 7102. The lien, however, remains in effect for only twenty years. If the claim remains unpaid and the municipality desires to maintain the lien, the municipality must revive it by filing a suggestion and averment of non-payment and default prior to the expiration of the twenty-year period. Section 15 of the MCTLA, 53 P.S. § 7183.

In response, GLS and the County continue to question the Class's necessity requirement as not being grounded in Pennsylvania law or, more particularly, the statutory scheme. They also note that Section 15 of the MCTLA provides that revival is appropriate any time before the twenty-year period for the lien expires. The statutory language, for example, does not provide that a revival can be filed "no sooner than" twenty years or only within a certain period before the twenty-year period expires. Moreover, GLS and the County dispute the Class's bad faith argument, noting the absence of anything in the record to establish multiple revivals over the twenty-year period. Instead, the record shows that the liens at issue in this case were revived only once. (GLS Br. at 19.)

■ For the reasons set forth above, we reject again the Class's contention that a municipality's decision to assign its tax claims is not a path to "collect" on the claims and thus any fees related to the assignment are uncollectable by the assignee. We also again refuse to read a "necessity" element into the evaluation of the question of what fees may be collected by the County or its assignee under the MCTLA beyond what the statutory language will support. Under the MCTLA, a municipality may revive its liens any time or number of times before the expiration of the twenty-year period. Thus, it need not wait until the nineteenth year to do so. In this case, then, the revivals that occurred as part of the process to effect the assignment of the liens *en masse* to GLS were proper under the law. With respect to the remaining issues, we adopt the portion of the trial court's opinion, authored by the Honorable R. Stanton Wettick, Jr., wherein Judge Wettick opined:

It may be that fees for filings by a taxing body that appear to be taken in bad faith or without any apparent purpose that furthers the interests of the municipality are not fees to "file, preserve or collect unpaid taxes." However, . . . it is clear from the applicable legislation that the Legislature intended to give a county of the second class a viable option of assigning its liens and claims as its method of collecting unpaid taxes. Thus, once the County elects to collect unpaid taxes through an assignment to a third party, the County's interests are advanced by offering tax claims that have a twenty-year life. In other words, an assignment is an option for collecting taxes recognized by the Legislature and the County's revival of liens that it is assigning is a reasonable step to effect an assignment.

Furthermore, in order to avoid keeping track of each lien, it would not be an unreasonable strategy for any county, including a county which collects unpaid taxes through its own employees, to revive all liens every nineteen years.

(8/25/2010 Opinion at 6.)

Finally, the Class contends that the trial court erred when it refused to consider the Class's contention that GLS is attempting to pursue revival fees from delinquent taxpayers in cases where there was no revival and, consequently, no revival fee. In other words, the Class attempts to challenge the notion that there was a "blanket revival." The Class contends that it has raised this issue since 1998, but, in derogation of Rule 2117(c) and 2119(e) of the Pennsylvania Rules of Appellate Procedure,[12] the Class

---

12. Both Rule 2117(c) and Rule 2119(e) provide that where applicable law provides that "an issue is not reviewable on appeal unless raised or preserved below," the party seeking to raise the issue on appeal must include in its brief, *inter alia*, references time, place, and manner in which the party raising the issue raised and preserved it before the trial court.

does not indicate the time, place, and manner in which it raised and preserved this question below.

In addition, in its April 1, 2010 Order, granting GLS's motion for summary judgment as to the attorneys' fees issue, the trial court scheduled a "status conference to consider plaintiffs' two remaining claims" for April 13, 2010. As the trial court points out in its August 25, 2010 Opinion, the Class did not raise this issue during the April 13th status conference. During the status conference, in consultation with the parties, the trial court framed the remaining issues to be decided as whether GLS could collect assignment and revival fees from delinquent taxpayers. (R.R. 91a–96a.) The question of whether GLS could collect revival fees from delinquent taxpayers where there was no revival was not among the issues raised and discussed during the status conference.[13]

In light of the foregoing, we will not disturb the trial court's decision not to address the issue of whether GLS is improperly collecting revival fees in the absence of a revival.[14]

## III. CONCLUSION

For the reasons set forth above, we affirm the portion of the trial court's April 1, 2010 Order that entered judgment in favor of GLS and against the Class, with the exception of Pentlong and Weitzel. With respect to those named plaintiffs

only, the April 1, 2010 Order will be reversed and the matter remanded to fashion appropriate relief consistent with this opinion. We will affirm the trial court's August 25, 2010 Order in all respects.

### *ORDER*

AND NOW, this 15th day of July, 2013, the April 1, 2010 Order of the Court of Common Pleas of Allegheny County (trial court), granting in part the motion for summary judgment filed by GLS Capital, Inc. (GLS) is AFFIRMED as it applies to the members of the certified class generally. With respect to representative plaintiffs Pentlong Corporation and Weitzel, Inc., however, the order is REVERSED.

It is further ORDERED that the August 25, 2010 Order of the trial court is AFFIRMED.

The matter is remanded to the trial court to address any remaining legal or factual issues consistent with the accompanying opinion. Jurisdiction relinquished.

---

13. Similarly, we have reviewed the Class's second amended complaint (C.R. No. 18) and do not see any factual allegation that GLS is collecting revival fees where there was no revival or any request for relief related to such a practice.

14. The Class expresses concern that the trial court's decision might be construed as a waiver of this issue in light of the entry of judgment in favor of GLS. But with respect to revival fees, that judgment, as this Court understands it, was only on the question of whether GLS may recover from delinquent taxpayers revival fees actually *incurred*. We do not see anything in the trial court's opinions and orders in this case that would allow GLS to collect a revival fee from a delinquent taxpayer when the lien in question was never revived and, consequently, the fee was never incurred. Nor should our opinion affirming the trial court's orders be interpreted to condone such a practice.